UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                         |     |                      |
| --------------------------------------- | --- | -------------------- |
| LEE PERKINS,                            | )   |                      |
|                                         | )   |                      |
| Petitioner,                             | )   |                      |
|                                         | )   | Civil Action No.     |
| v.                                      | )   | 08-40231-FDS         |
|                                         | )   |                      |
| GARY RODEN,                             | )   |                      |
|                                         | )   |                      |
| Respondent.                             | )   |                      |

# MEMORANDUM AND ORDER ON
# PETITION FOR WRIT OF HABEAS CORPUS

**SAYLOR, J.**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a person in state custody. Petitioner Lee Perkins was convicted of first-degree murder and aggravated rape in Massachusetts Superior Court on January 20, 2000. He was sentenced to life imprisonment for the murder charge and a prison term of thirty to forty years for the charge of aggravated rape. After his conviction was affirmed by the Supreme Judicial Court, he filed a petition for habeas relief pursuant to 28 U.S.C. § 2254.

Respondent Gary Roden, the Superintendent of NCCI-Gardner, opposes the petition, contending, among other things, that petitioner has failed to exhaust his state remedies as to one of the claims raised in the petition. For the reasons set forth below, the petition for a writ of habeas corpus will be dismissed unless petitioner files a request to dismiss the unexhausted claims in his petition and proceed on the merits of the exhausted claims.

I.  **Background**

The facts surrounding the crime that led to petitioner's conviction are extensively set out in the decision of the Supreme Judicial Court, and only the facts that are relevant to this opinion bear repetition.  *See Commonwealth v. Perkins*, 450 Mass. 834 (2008).

On March 25, 1990, a 19-year-old single mother was found dead in her Boston apartment, naked from the waist down and the handle of a steak knife protruding from her chest.  The cause of death was determined to be stab wound to the chest, and sperm cells were detected in vaginal and rectal swabs taken from her body.  The police obtained a blood sample from the father of the victim's child and another male acquaintance, but DNA testing excluded both men.  The police also tried to contact petitioner, who had met the victim the previous month and had visited her at her apartment, but they could not locate him and the case remained unsolved for several years.

Six years later, on May 31, 1996, two officers from the Boston police department's cold-case squad visited petitioner, who was incarcerated in the state prison in Concord at the time on another charge.  Petitioner was advised of his *Miranda* rights.  He was then shown photographs of the victim, her child, and her apartment.  After reviewing the photographs, petitioner denied knowing the victim or ever having been inside her apartment.  The officers asked petitioner if he would consent to give a blood sample; he declined.

During the interview, petitioner smoked two cigarettes and drank a can of soda that the police made available to him.  He left the cigarette butts and the empty soda can in the interview room when the interview was over.  After he left, the officers submitted the two cigarette butts and the empty soda can for DNA testing along with a blood sample and a vaginal swab taken from the victim's body.  The DNA testing revealed that the profile of the sperm in the vaginal

swab matched the profile of the cells left on the cigarette butts smoked by petitioner. That evidence eventually led to a grand jury's request for a blood sample from petitioner, which was carried out by court order. Petitioner's blood sample was sent for DNA testing against a rectal swab taken from the victim's body, and the profile of the blood sample also matched the profile of the sperm in the rectal swab.

Petitioner was indicted by a Suffolk County grand jury on October 27, 1997, for first-degree murder and aggravated rape. He moved to suppress the discarded cigarette butts and the soda can, and any evidence derived from them, asserting that the evidence was obtained in violation of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Articles 12 and 14 of the Massachusetts Declaration of Rights. After an evidentiary hearing, the trial court issued a written decision on January 20, 1999, denying the motion.

On January 20, 2000, petitioner was convicted after a jury trial of first-degree murder and aggravated rape. He appealed his conviction and the denial of two subsequent motions for new trial to the Supreme Judicial Court.[1] The appeal asserted seven claims. The first claim was that the motion to suppress the evidence derived from the cigarette butts and the soda can should have been granted because the police tricked him into smoking and discarding cigarettes from which enough DNA was extracted to support a court order for a blood sample. Petitioner argued that "the seizure of his DNA evidence from the discarded material violated Article 14 of the Massachusetts Declaration of Rights and the Fourth Amendment to the United States

---

[1] Massachusetts Rule of Appellate Procedure 11 allows for the Supreme Judicial Court to take direct appeals in certain circumstances.

Constitution." It did not mention the Fifth, Sixth, or Fourteenth Amendments to the U.S. Constitution, which had been raised in his motion to suppress. (Respondent's Supp. Answer, Ex. C at 24-27). On March 20, 2008, the SJC rejected all seven of his claims and affirmed his conviction and the orders denying his motions for new trial. *Commonwealth v. Perkins*, 450 Mass. 834 (2008).

On November 19, 2008, petitioner filed the present petition for writ of habeas corpus under 28 U.S.C. § 2254. He asserts seven claims for relief, which largely mirror the claims raised in his appeal to the Supreme Judicial Court.[2] As in his appeal to the SJC, the first of the seven claims is that the motion to suppress the DNA evidence derived from the discarded cigarette butts and soda can should have been granted. However, he also asserts violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution as to that claim—which he did not assert in his appeal to the SJC.

---

[2] The seven claims in petitioner's memorandum in support of his habeas petition are:

(1) the motion to suppress the DNA evidence derived from the discarded cigarette butts and the soda can should have been granted because the police tricked him into smoking and discarding cigarettes from which enough DNA was extracted to support a court order for a blood sample;

(2) it was error to bar him from examining witnesses about Sampson, a possible suspect;

(3) it was error to overrule his objection to certain testimony during the trial regarding the victim's voice;

(4) a new trial should be granted pursuant to Mass. Gen. Laws ch. 278, § 33E because of significant omissions in the police investigation;

(5) the evidence was insufficient to support a verdict of premeditated murder;

(6) the trial judge erred in denying his first motion for new trial because the prescription medication that he was taking during the trial made him unable to testify in his defense and his counsel was ineffective in not bringing this matter to the trial judge's attention; and

(7) his second motion for new trial should have been granted because defense counsel wore a wireless microphone during trial that transmitted attorney-client communications to third parties without his voluntary and knowing consent.

Respondent contends that to the extent petitioner raises claims of violations of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, the claims are unexhausted and should be dismissed. Respondent does not contend that any other claims argued in the habeas petition are unexhausted.

## II. Analysis

A federal court may not consider a petition for a writ of habeas corpus filed by a person in state custody unless the petitioner has exhausted his state court remedies with respect to all claims raised in his application. *See* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that - (A) the applicant has exhausted the remedies available in the courts of the State."); *see also Rose v. Lundy*, 455 U.S. 509, 518 (1982). Underlying the exhaustion requirement is the principle of comity. The federal and state courts are "equally bound to guard and protect the rights secured by the Constitution," and "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Rose*, 455 U.S. at 518.

In order to satisfy the exhaustion requirement, a petitioner must present both the factual and legal bases of his federal claim "fairly and recognizably" to the state courts. *Adelson v. DiPaola*, 131 F.3d 259, 262 (1st Cir. 1997) (citing *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)). "To carry this burden, the petitioner must demonstrate that he tendered each claim 'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" *Adelson*, 131 F.3d at 262 (quoting *Scarpa v. Dubois*, 38 F.3d 1, 6 (1st Cir. 1994)).

In his memorandum in support of habeas relief, petitioner asserted violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments with respect to the denial of his motion to suppress the DNA evidence. Although he raised the same constitutional violations in his motion to suppress, he did not do so in his appeal to the Supreme Judicial Court. He was required to do so in order to fulfill the exhaustion requirement. *See Baldwin*, 541 U.S. at 32 (holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief . . . that does not alert it to the presence of a federal claim in order to find material . . . that does so"). Petitioner's appeals brief to the Supreme Judicial Court argued only that the seizure of his DNA from the discarded items violated the Fourth Amendment and Article 14 of the Massachusetts Declaration of Rights. He framed his argument exclusively in terms of those provisions, citing only state court cases that primarily focused on one or both of those provisions.[3] Even assuming that the Fourteenth Amendment was implicitly included in that argument because it makes the Fourth Amendment applicable to the states, petitioner still made no mention of the Fifth or the Sixth Amendments. Nor did he make any arguments that would have alerted the Supreme Judicial Court to the relevance of those amendments.[4] Petitioner did

---

[3] Citation to federal constitutional precedent is not required for exhaustion. *See Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994). However, where a habeas corpus petitioner relies on citation of state authorities for satisfaction of the exhaustion requirement, "such authorities must play a prominent part in his state court argument." *Dougan v. Ponte*, 727 F.2d 199, 202 (1st Cir. 1984). The First Circuit has advised that "the only safe course for a petitioner is explicitly to identify his federal constitutional claims before the state court. This course will not only give the state courts a fair opportunity to correct any constitutional error but will obviate the need for . . . minute retrospective dissection of state court proceedings . . . ." *Dougan*, 727 F.2d at 199. Here, the bulk of the state court cases cited by petitioner with respect to the motion to suppress focused on the Fourth Amendment and/or Article 14, and the few exceptions neither explicitly discussed the Fifth or Sixth Amendment nor played a prominent part in the argument regarding the motion to suppress.

[4] It is true that the Supreme Judicial Court need not specifically address or decide federal claims in order for the exhaustion requirement to be met. *Gagne v. Fair*, 835 F.2d 6, 8 (1st Cir. 1987). Nonetheless, the SJC's characterization of petitioner's argument regarding the motion to suppress indicates that it understood petitioner's argument as only implicating Article 14 and the Fourth Amendment as applicable to the states through the

6

make one passing reference to "due process"; his brief stated that the trial court "did not address whether there had been police deception, and whether considerations of due process should not require suppression of evidence thus obtained." (Ex. C at 25). But an "oblique" invocation of the phrase "due process" without analysis is not sufficient to satisfy the exhaustion requirement. *Gagne v. Fair*, 835 F.2d 6, 7 (1st Cir. 1987); *see also Adelson*, 131 F.3d at 263 (stating that the mere incantation of constitutional buzzwords, unaccompanied by any federal constitutional analysis, does not suffice to carry the burden of demonstrating fair presentment of a federal claim"). The Court accordingly finds that petitioner has failed to exhaust his state court remedies with respect to the claims of violations of the Fifth and Sixth Amendments arising from the denial of his motion to suppress.

Where a petitioner has filed a "mixed petition" that includes both exhausted and unexhausted claims, the entire petition must be dismissed unless he agrees to dismiss the unexhausted claims and proceed only with the exhausted claims. *Clements v. Maloney*, 485 F.3d 158, 168-69 (1st Cir. 2007) ("Where a petition is deemed mixed, district courts must either dismiss the petition . . . or permit the petitioner to dismiss his unexhausted claims . . . . If [petitioner] declines to dismiss his unexhausted claims, the district court should dismiss the entire

---

Fourteenth Amendment. *See Perkins*, 450 Mass. at 841 ("[Petitioner] contends there are prison rules that forbade him from taking the cigarette butts and soda can with him, and where the officers acknowledged a backup plan to make cigarettes and soda available to him to obtain his saliva sample for DNA testing in the event he declined to give a blood sample, his failure to remove the soda can and cigarette butts cannot be deemed an abandonment of the items seized for purposes of the Fourth and Fourteenth Amendments to the United States Constitution, or art. 14 of the Massachusetts Declaration of Rights.").

7

petition without prejudice."). If petitioner does not wish to dismiss the unexhausted claims, he must return to state court and pursue the unexhausted claims.[5]

### III. Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus will be dismissed without prejudice unless, within 30 days of the date of this Order, petitioner files a request to dismiss the unexhausted claims in his petition and proceed on the merits of the exhausted claim. **So Ordered.**

                                            /s/ F. Dennis Saylor
                                            F. Dennis Saylor IV
                                            United States District Judge

Dated: April 28, 2011

---

[5] Petitioner should be aware that filing of his federal habeas petition did not toll any applicable limitations periods under Massachusetts law, and, therefore, he may now be barred from raising the unexhausted claims in state court because the relevant deadlines may have passed.

Petitioner should also be aware that the filing of his federal habeas petition did not toll the running of the one-year statute of limitations contained in 28 U.S.C. § 2244(d). *See Neverson v. Farquharson*, 366 F.3d 32, 38 (1st Cir. 2004). Accordingly, any successive petition that he attempts to file in this Court (for example, after attempting to exhaust his state remedies) may be barred as untimely.